[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11695
Non-Argument Calendar

_____

D.C. Docket No. 3:13-cr-00229-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

versus

LEON PERRY BROOKS, SR.,

Defendant -Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 12, 2016)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Leon Brooks, Sr. appeals his convictions for knowingly possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2). Mr. Brooks asserts three arguments on appeal. He first contends that the district court abused its discretion by allowing the jury to view short video clips of the child pornography that was found on a computer in his home because under Federal Rule of Evidence 403 their probative value was far outweighed by their prejudicial nature. He next argues that the district court erred in denying his motion for judgment of acquittal because the government did not prove beyond a reasonable doubt that he knowingly possessed child pornography. Finally, he claims that the district court abused its discretion by denying his motion for a new trial based upon the weight of the evidence. He says that the evidence he presented shows that he is not guilty, and that the district court erred in not granting him a new trial.

Following review of the record and consideration of the parties' briefs, we affirm Mr. Brook's convictions.

# I

In January of 2013, Detective Anthony Durfee of the Jacksonville County Sheriff's Office received a tip that an individual was sharing child pornography over a file sharing network. Detective Durfee downloaded two videos containing child pornography from the network. With the aid of a subpoena issued to AT&T,

2

he was able to obtain information concerning the source of these videos. The videos came from an account that belonged to Mr. Brooks.

Detective Durfee proceeded to interview Mr. Brooks. During the interview, Mr. Brooks stated that his family accessed the Internet through a desktop computer, an iPad, and cellphones. Mr. Brooks later mentioned that there was also a laptop used for Internet access. Mr. Brooks admitted that he occasionally looked for adult pornography on the internet, but that he had never searched for child pornography. Mr. Brooks also mentioned that he had hired a man named Al to do some work on one of the computers, and that Al had done some of that work remotely. Mr. Books said that he did not have Al's contact information,  but Al's phone number was found in his cellphone under the heading of "Computer Man."

Mr. Brooks' home was searched pursuant to a search warrant. The officers seized one desktop computer, two laptops, cellphones, CDs, and DVDs from the home. The desktop computer and one of the laptops contained items relating to child pornography.

The laptop contained three password protected profiles: Leelike, Angelyna, and Guest. The Leelike and Angelyna profiles had the same password.  The Leelike profile was the only profile that contained child pornography. Its video directory contained 13 videos titled with terms commonly associated with child pornography, such as "pthc," which stands for preteen hardcore. Eleven of those 13

3

videos contained child pornography. One of the videos was the source of the video downloaded by Detective Durfee. In addition, 28 additional images of child pornography were also found after performing a thumbnail analysis on the hard drive. Three of those images matched videos in the directory, and there were an additional 18 unique images. Two recently deleted files containing the term "pthc" were found in an additional video directory. A media player on the laptop had recently played a video that contained "pthc" in the title. There were also numerous file sharing programs on the laptop. The top 10 video search terms in one of the programs were all related to child pornography.

An examination of the desktop computer revealed similar files containing child pornography. There were four profiles on that computer: Leon, Angelyna, Leon Jr., and Guest. All of the child pornography was discovered under the Leon profile. An analysis of the desktop revealed several files containing terms associated with child pornography in the title. There were four screenshots discovered that contained children involved in explicit sexual conduct.

## II

A grand jury indicted Mr. Books on two counts of knowingly receiving child pornography in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1); one count of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1);

4

and one count of knowingly possessing child pornography in violation of 18 U.S.C § 2252(a)(4)(B) and (b)(2).  Mr. Brooks pled not and proceeded to trial.

At trial the government presented testimony from several witnesses. Detective Durfee testified about his investigation and interview of Mr. Brooks. Mr. Brooks' son testified that he had access to the computer, but never downloaded or searched for child pornography. Al, the "computer man," testified that he had worked on a desktop for Mr. Brooks and told him about file sharing programs, but denied that he had searched for or downloaded pornography on any of Mr. Brooks' devices. Finally, FBI Special Agent James Greenmum testified that he performed a forensic analysis of the computer and discovered child pornography, and that he was able to tell when the files were created.

The government then introduced four video clips from four different videos of child pornography. The clips were all less than 20 seconds in duration. The clips were muted and three of them depicted vaginal, anal, and attempted vaginal penetration of young girls. The fourth clip depicted two young girls kissing and performing oral sex on one another.

For his part, Mr. Brooks called several witnesses, including his wife to testify about his good character and explain that he was a law abiding citizen. Mr. Brooks took the stand and denied any allegations of wrongdoing. He attempted to shift blame for the child pornography to his son or his son's friends.

5

The jury returned guilty verdicts for lesser–included offenses for counts one through three, and found Mr. Brooks guilty as charged for count four; resulting in four convictions for possession of child pornography. The district court sentenced Mr. Brooks to 21 months' imprisonment on each count, to be served concurrently, followed by a term of five years of supervised release.

### III

Mr. Brooks first argues that the district court erred in allowing the government to publish to the jury the brief clips of the child pornography extracted from his laptop. He argues that the disturbing nature of the videos was unfairly prejudicial and outweighed their probative value under Rule 403. We disagree, and conclude that the district court did not abuse its discretion.

We review a district court's evidentiary rulings for abuse of discretion. *See United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003). Rule 403 permits the district court to exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The exclusion of evidence "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010). When we examine Rule 403 issues on appeal, we scrutinize the evidence in the light most favorable to

its admission, maximizing its probative value and minimizing its undue prejudicial impact. *See id*.

The district court's decision to admit the clips of the videos is consistent with our decision in *Alfaro-Moncada*. In that case, we held that a district court did not abuse its discretion by allowing five still images of child pornography to be shown to the jury, where the admission of those still images served a valid purpose. *See Alfaro-Moncada*, 607 F.3d at 734. In this case, there were four total videos of child pornography that totaled over 25 minutes in duration. The district court allowed the government to play four clips, all lasting less than 20 seconds each, and performed the same Rule 403 balancing test that was performed in *Alfaro-Moncada*. *See id*. Much like the still images in *Alfaro-Moncada*, the admission of the clips have served a valid purpose. The clips proved that the files were actually child pornography. The clips also helped demonstrate Mr. Brooks' knowledge of what the clips contained. Demonstrating that each file actually contained child pornography also went directly to intent. The clips tended to show that files of a certain type were being assembled into a collection. The admission of the video clips, in short, served a valid purpose. *See id*.; *Dodds*, 347 F.3d at 899.

We also hold that the district court did not abuse its discretion by not allowing Mr. Brooks to stipulate that the files actually contained child pornography. "The prosecution is entitled to prove its case by evidence of its own

7

choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it." *Alfaro-Moncada*, 607 F.3d at 734 (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Under the facts of this case, the district court correctly allowed the prosecution to reject Mr. Brooks' offer to stipulate that the files contained child pornography.

In sum, the district court properly balanced the probative value and prejudicial nature of the clips by limiting their length and by providing a cautionary instruction. The district court did not abuse its discretion in deciding that the risk of prejudice from the video clips did not substantially outweigh their probative value.

## IV

Mr. Brooks next argues that the district court erred in denying his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. He asserts that there was insufficient evidence to sustain his convictions. Mr. Brooks is mistaken, as the jury had enough evidence to convict him.

We review a properly preserved claim for judgment of acquittal *de novo*. *See United States v. Jiminez*, 654 F.3d 1280, 1284 (11th Cir. 2009). We review the evidence presented in the light most favorable to the government, and draw all

reasonable inferences in favor of the jury's verdict. *See United States v. Dulcio*, 441 F.3d 1269, 1276 (11th Cir. 2006). We look only to see if a "reasonable fact-finder could have determined that the evidence proved the defendant's guilt beyond a reasonable doubt." *United States v. Smith*, 459 F.3d 1276, 1286 (11th Cir. 2006). We will not disturb a guilty verdict unless the evidence presented clearly shows that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *See United States v. Silvestri*, 409 F.3d 1311, 1327(11th Cir. 2005).

Here, the district court reserved making a ruling on the Rule 29 motion at both the close of the government's case-in-chief and at the close of evidence. When a district court reserves ruling on a motion for a judgment of acquittal, it must decide the motion based upon the evidence that had been entered into the record at the time the ruling was reserved. *See* Fed. R. Crim. P. 29(b). We similarly review only the evidence that was in the record when the motion was made. *See United States v. Moore*, 504 F.3d 1345, 1347 (11th Cir. 2007).

In order to secure a conviction under 18 U.S.C § 2252(a)(4)(B) the government must prove that a person knowingly possessed child pornography. *See Alfaro-Moncada*, 607 F.3d at 733. The knowledge element is satisfied when the defendant knows that the matter in question shows minors engaging in sexually explicit conduct. *See id*. The knowledge element may be proved circumstantially. *See United States v. Utter*, 97 F.3d 509, 512 (11th Cir. 1996).

9

There was sufficient evidence in the government's case in chief to support a conviction. The government's case in chief included the following: evidence that one of the videos downloaded by Detective Durfee was an exact match to one of the ones on Mr. Brooks' laptop; Mr. Brooks' false denial of having Al's contact information; Mr. Brooks' failure to mention the laptop during his interview with Detective Durfee, the fact that the child pornography on the laptop and desktop was only found on Mr. Brooks' profiles; the fact that the first download of child pornography occurred only a few days after a file sharing program was installed on his laptop; the search terms in the file sharing program were related to child pornography; and that the child pornography files had been refined through deletions and re-naming. The government also had Mr. Brooks' son testify that he had never used the laptop for child pornography and that he had not used the desktop computer at all.

The government's evidence was circumstantial. Nevertheless, it was still enough to permit a reasonable jury to determine beyond a reasonable doubt that Mr. Brooks possessed child pornography. *See Smith*, 459 F.3d at 1286; *United States v. Pruitt*; 638 F.3d 763, 766 (11th Cir. 2011).

Mr. Brooks asserts that the evidence he presented at trial was enough to contradict the government's evidence so that no rational fact finder could have found him guilty. To recap, he put on testimony from his wife and other witnesses

about his good character and his law abidingness. He took the stand in his own defense and maintained that he was innocent throughout the proceedings and attempted to provide alibis for some of the dates in which the child pornography was downloaded. He also attempted to shift the blame for the child pornography onto his son or his son's friends.

Mr. Brooks' argument comes down to choices about credibility and inferences, and those are generally choices for the jury to make. Moreover, a jury is free to disbelieve a defendant who takes the stand and believe the opposite of what he says. *See United States v. Mullis*, 53 F.3d 312, 314 (11th Cir. 1995). Based on the evidence presented, we find no error on the part of the district court denying Mr. Brooks' Rule 29 motion at the close of evidence.

## V

Finally, Mr. Brooks challenges the district court's denial of his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. We are not persuaded.

We review a district court's disposition of a motion for new trial for abuse of discretion. *See United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." *Id*. Motions for a new trial

are granted sparingly and only for an exceptional case. *See id.* A new trial for example, may be the appropriate remedy when the government's witnesses have been severely impeached and the government's case has been marked by discrepancies. *See id.*

This is not an exceptional case, and the weight of the evidence presented did not warrant granting Mr. Brooks a new trial. The government's witnesses were not impeached. The government's case was circumstantial, but it was not marred by discrepancies. Mr. Brooks' competing theory that his son or someone else repeatedly downloaded the child pornography and refined the files over time was heard and rejected by the jury. Mr. Brooks' alternative theory did not present any discrepancies in the government's case; it simply presented a different view of the facts and attempted to shift the blame to someone else. Although it did provide a counter weight to the evidence put forward by the government, it did provide enough weight to warrant a reversal of the district court's denial of a motion for new trial.

In sum, the district court did not abuse its discretion in denying Mr. Brooks a new trial. The evidence presented at trial did not preponderate heavily against the guilty verdicts, such that to let them stand would be a miscarriage of justice. *See Martinez*, 763 F.2d at 1313.

## VI

We affirm Mr. Brooks' convictions.

**AFFIRMED**